No. 2024-____

_____

# United States Court of Appeals
## for the Federal Circuit

_____

**In Re Anonymous Media Research Holdings, LLC,**
*Petitioner*

_____

*On Petition for Writ of Mandamus to the*
*United States District Court for the Western District of Texas*
*Case No. 1:23-cv-01143-RP, Hon. Judge Robert Pitman*

_____

## ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC's
## PETITION FOR WRIT OF MANDAMUS

Jeffrey A. Lamken
Lucas M. Walker
Rayiner Hashem
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Ave., N.W.
Washington, D.C. 20037
(202) 556-2000

Elizabeth K. Clarke
MOLOLAMKEN LLP
300 N. LaSalle Street,
Suite 5350
Chicago, IL 60654
(312) 450-6700

Kelsi Stayart White
    *Counsel of Record*
Jason McManis
Enes Ovcina
Weining Bai
AHMAD, ZAVITSANOS
    & MENSING, PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
kwhite@azalaw.com

*Attorneys for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 24- |
| **Short Case Caption** | In Re Anonymous Media Research Holdings, LLC |
| **Filing Party/Entity** | Anonymous Media Research Holdings, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/30/2024

Signature: /s/ Kelsi Stayart White

Name: Kelsi Stayart White

FORM 9. Certificate of Interest

Form 9 (p. 2)<br>March 2023

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Anonymous Media Research Holdings, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| Ward, Smith & Hill, PLLC | Louis Liao | Abanoub Henry |
|---|---|---|
| Andrea L. Fair | Sujeeth Rajavolu | |
| Chun Deng | Hailey Pulman | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ...................................... 3

RELIEF SOUGHT .............................................................. 3

ISSUE PRESENTED ........................................................... 3

STATEMENT ...................................................................... 3

I.    Roku infringes Anonymous Media Research's
      ACR-processing patents. .................................................. 3

II.   The district court grants Roku's motion to transfer. ....................... 5

REASONS THE WRIT SHOULD ISSUE ............................. 12

I.    The district court clearly abused its discretion
      by committing clear legal and factual error. ................................. 14

      A.    The district court committed clear legal and
            factual error in assessing witness convenience. .................. 16

            1.    The district court departed from the 100-mile test
                  required by governing Fifth Circuit precedent ............ 16

            2.    The district court's factual analysis
                  compounded the error. ................................................. 21

      B.    The district court's analysis of the access-to-evidence
            factor disregarded precedent and rested on
            speculation and clear factual error. ..................................... 26

      C.    The district court's analysis of the compulsory-process
            factor is conclusory and unsupported .................................. 30

i

D.      The district court's analysis of the local-interest
        factor defies precedent. ........................................... 34

E.      None of the remaining factors supports transfer. ................ 36

II.     Mandamus is warranted. ................................................. 37

CONCLUSION ......................................................................... 40

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Acumed LLC v. Stryker Corp.*,
  525 F.3d 1319 (Fed. Cir. 2008) ............................................................ 21

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ........................................... 7, 19, 20, 39

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ....................................................... *passim*

*Defense Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ....................................................... *passim*

*Emerging Auto. LLC v. Kia Corp.*,
  No. 2:23-cv-434, 2024 WL 3170398
  (E.D. Tex. June 25, 2024) ................................................................... 38

*In re FedEx Corp. Servs., Inc.*,
  No. 2022-156, 2022 WL 10887770 (Fed. Cir. Oct. 19, 2022) .............. 26

*Freedom Pats. LLC v. DISH Network Corp.*,
  No. 4:23-cv-303, 2024 WL 1147828
  (E.D. Tex. Mar. 15, 2024) ................................................................... 38

*Haptic, Inc. v. Apple, Inc.*,
  No. 23-cv-1351-DII, 2024 WL 2954194
  (W.D. Tex. Apr. 15, 2024) ................................................................... 38

*iCharts LLC v. Tableau Software, LLC*,
  No. 23-cv-1225-DII, 2024 WL 2305214
  (W.D. Tex. May 21, 2024) ................................................................... 38

*iQar Inc. v. Tesla, Inc.*,
  No. 1:23-cv-694-DII (W.D. Tex. Mar. 4, 2024) ................................... 38

*In re Juniper Networks, Inc.*,
  No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) ................. 17

iii

*In re Micron Tech., Inc.*,
875 F.3d 1091 (Fed. Cir. 2017) ........................................... 39

*Panduit Corp. v. All States Plastic Mfg. Co.*,
744 F.2d 1564 (Fed. Cir. 1984) ........................................... 21

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) ................................................ 28

*In re Princo Corp.*,
478 F.3d 1345 (Fed. Cir. 2007) ............................................. 3

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021)...................................... 12, 16

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
329 F.3d 823 (Fed. Cir. 2003) ............................................. 13

*Summit Tech., Inc. v. Nidek Co.*,
435 F.3d 1371 (Fed. Cir. 2006) ........................................... 20

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ...................................... *passim*

*Tollett v. City of Kemah*,
285 F.3d 357 (5th Cir. 2002)................................... 13, 16, 28

*Umbra Techs. Ltd. v. VMware, Inc.*,
No. 1:23-cv-904-DII, 2024 WL 1123592
(W.D. Tex. Mar. 13, 2024)................................................... 38

*Universal Connectivity Techs. Inc. v. HP Inc.*,
No. 23-cv-1177-RP, 2024 WL 3305724
(W.D. Tex. July 3, 2024) ..................................................... 38

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004)................................... 7, 17, 21

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)................................... 2, 12, 37

iv

## STATUTES AND RULES

28 U.S.C. §1295(a) .......................................................................... 3

28 U.S.C. §1331 ............................................................................... 3

28 U.S.C. §1338(a) .......................................................................... 3

28 U.S.C. §1651(a) ........................................................................... 3

28 U.S.C. §1404(a) ................................................................... *passim*

Fed. R. Evid. 401 ............................................................................ 33

## INTRODUCTION

In transferring this case, the district court repeatedly departed from clear—and controlling—Fifth Circuit precedent. Under governing Fifth Circuit law, the "inconvenience borne by witnesses" in traveling to a particular forum "positively and linearly scales with the additional distance they must travel." *In re Clarke*, 94 F.4th 502, 514 (5th Cir. 2024). The Fifth Circuit has recently clarified that district courts cannot disregard the extra inconvenience that additional distance imposes on witnesses simply because they would travel a long way to either forum. *In re TikTok, Inc.*, 85 F.4th 352, 361-62 (5th Cir. 2023).

But the district court here did just that. Ignoring recent Fifth Circuit precedent, it disregarded the substantial additional inconvenience that numerous witnesses in New York, Boston, and the United Kingdom would suffer if this case were transferred from Texas to California, simply because those "witnesses will have to travel a significant distance regardless." Appx10. That failure to apply governing law was, by definition, a clear abuse of discretion warranting mandamus relief.

Exacerbating the error, the district court ruled that the Northern District of California was more convenient for a "higher number" of

1

witnesses. Appx11. But the parties identified at least 20 witnesses for whom Texas was closer, and at most 13 for whom California was closer. Unless "13>20" is somehow good math, the decision cannot stand.

Those errors—on the most important transfer factor—are the tip of the iceberg. For example, the district court emphasized that the defendant's cloud servers are located in California. But the defendant admitted those servers are in ***South Carolina***.

The court also ruled that "local interest[s]" favored transfer to the Northern District of California "because [defendant] Roku is headquartered there." Appx13. But recent Fifth Circuit precedent holds that the local-interest factor "do[es] not consider the parties' connections to the venue." *Clarke*, 94 F.4th at 511.

Mandamus is warranted to correct a "clear abuse of discretion" in granting a transfer motion, particularly where the issues have "importance" for future cases. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308, 319 (5th Cir. 2008). That standard is amply met here. The decision below continues a pattern of recent transfer orders that disregard controlling Fifth Circuit law. The district court here has issued least half a dozen such decisions this year alone. The Court should grant mandamus to

correct those obvious and recurring errors, and promote consistency in transfer decisions.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction under 28 U.S.C. §§ 1295(a) and 1651(a). *In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007).

## RELIEF SOUGHT

Plaintiff Anonymous Media Research Holdings, LLC ("AMR") respectfully requests a writ of mandamus reversing or vacating the U.S. District Court for the Western District of Texas's transfer of this case to the Northern District of California under 28 U.S.C. § 1404(a), and directing the district court to recall any case files from the transferee venue.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in granting Roku's motion to transfer venue under 28 U.S.C. § 1404(a) by, among other things, failing to apply recent controlling Fifth Circuit precedent.

## STATEMENT

### I.    Roku infringes Anonymous Media Research's ACR-processing patents.

Many consumer electronics, like smart TVs, incorporate automatic

content recognition technology or "ACR." That technology recognizes the content that a consumer is viewing in real time by capturing "fingerprints" of the content. Appx607. Companies like defendant Roku leverage ACR data to create a comprehensive picture of viewers' media consumption practices and sell targeted advertising. Appx607.

But "raw" ACR data is "dirty"—error-prone and incomplete. For the data to be useful to media companies like Roku, it must be processed and analyzed to identify and correct errors or omissions, and to derive useful media measurement insights. Appx607. The AMR patents-in-suit do just that. Appx607-08.

AMR's patents claim an invention that "scrub[s]" a stream of raw ACR results against an expected pattern reference (*e.g.*, an expected playlist) to fill gaps and correct errors. Appx1397 (¶ 20) (discussing Patent Nos. 8,510,768 and 10,719,848). AMR also invented a method for determining the type of channel the user employs to consume content based on at least two sequentially ordered "content identifiers." Appx1397-98 (¶ 21) (Patent Nos. 8,756,622 and 10,719,849). And AMR pioneered a process to deduce user actions, like skipping or pausing content, based on the offset of time positions of the "fingerprints" as compared to the time

positions of the reference content sequence. Appx1398(¶22) (Patent Nos. 8,296,791 and 10,572,896). Those inventions allow companies like Roku to translate millions of fingerprints into the insightful media measurements that advertisers seek.

Roku is a media company headquartered in San Jose, California. Appx19. Roku's own description of how it manages ACR data indicates that Roku's ACR software and hardware architecture practices AMR's patents. Appx1399-401(¶¶25-30). Roku makes, sells, and uses the accused technology throughout the United States. Appx1398-401(¶¶23-30).

AMR filed an infringement action against Roku in the Western District of Texas ("WDTX"), Austin Division, where Roku maintains an office. Appx1393-94; Appx31. Roku moved to transfer the case to the Northern District of California ("NDCA"). Appx15.

## II.    The district court grants Roku's motion to transfer.

The district court (Pitman, J.) granted Roku's motion to transfer. Appx1-14. The court framed the action as directed at technology "acquired from Nielsen in 2021." Appx1.  (Roku, however, was alleged to infringe for years before that acquisition, Appx608.) The court then addressed the "private" and "public" interest factors the Fifth Circuit has

identified to govern the transfer inquiry.[1]

***Convenience of Witnesses.*** The district court identified the convenience of willing witnesses as the "'most important'" factor, and found it "strongly" favored transfer. Appx11.

In its transfer motion, Roku had identified 5 witnesses located in South Korea or California as the "most knowledgeable employees" about the accused technology. Appx20-21. It agreed that another of the "most knowledgeable" witnesses was in New York. Appx21. In response, AMR identified 25 relevant witnesses for whom the Western District of Texas was more convenient. Five were in WDTX itself. Appx609-10. At least 2 Roku engineers who worked on the accused technology were in the United Kingdom. Appx611-12. More than 10 Roku and AMR witnesses were in New York, including Roku employees who led Roku's entry into the ACR space and its 2021 acquisition of ACR technology from Nielsen.

---

[1] The private factors are: (1) "relative ease of access to sources of proof"; (2) "availability of compulsory process" for witnesses; (3) "cost of attendance for willing witnesses"; and (4) "other practical problems." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quotation marks omitted). The public factors are: (5) "court congestion"; (6) "local interest"; (7) "familiarity of the forum with" governing law; and (8) "avoidance of unnecessary problems of conflict of laws" or "application of foreign law." *Id.* (quotation marks omitted).

Appx612-13. At least 4 Boston-based Roku employees work on commercializing the ACR data produced using the infringing technology. Appx613-14. On reply, Roku belatedly identified 7 new California or South Korea current and former Roku employees whom it contended were likely witnesses. Appx1208-09, Appx1214-15.[2]

Addressing the relative burdens on witnesses, the district court acknowledged that the Fifth Circuit applies a "'100-mile rule'": When "'the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in ***direct relationship to the additional distance to be traveled***.'" Appx10 (emphasis added) (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004)).

The district court, however, discounted the "additional distance" New York, Boston, and UK witnesses would have to travel to reach the NDCA instead of the WDTX. Appx9. Courts, it declared, need not "rigidly" apply the 100-mile rule "if witnesses will have to travel a significant distance regardless of the venues at stake." Appx9 (citing *In*

---

[2] AMR moved to strike Roku's untimely additions. Appx1303-11. The district court denied the motion. Appx4-5.

*re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020)). The district court did not acknowledge more recent Fifth Circuit precedent, cited extensively in AMR's brief, rejecting that approach. *See* Appx606-25 (citing *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023), and *In re Clarke*, 94 F.4th 502 (5th Cir. 2024)).

The district court then engaged in a counting exercise: It ruled that witness convenience—the "'most important factor'"—"weighs strongly in favor of transfer" because there are a "higher number of likely witnesses located in the NDCA and South Korea," for whom the NDCA was closer, than "potential witnesses located in the United Kingdom, New York, and Boston," for whom the WDTX was closer. Appx10-11. The court did not address the relative burdens of attendance under the Fifth Circuit's 100-mile rule. Nor did it explain how it concluded there were a "higher number" of likely witnesses in California and South Korea than in New York, Boston, or the UK. The parties collectively identified just 13 likely witnesses in California or South Korea, compared to 20 likely witnesses in New York, Boston, or the UK. Appx10-11; *see* pp. 21-22, *infra*. And the court discounted the 5 Texas witnesses entirely. Appx10.

8

***Ease of access to proof.*** The district court concluded it was "likely" that more relevant evidence is located in NDCA. Appx7. The court, however, did not identify any evidence that is clearly more easily available in NDCA than in WDTX. During venue discovery, Roku's witnesses uniformly agreed that, because Roku's documents are stored electronically, they are equally accessible from either district. Appx615-16; Appx676-78; Appx712-14; Appx731-32; Appx740-41. Without addressing that admission, the district court proclaimed that "the fact that most evidence is electronic does not mean that access is uniform in each district." Appx7. It asserted that Roku's "cloud servers (where it stores its documents)" were "located in the NDCA," Appx7—despite Roku's admission that the servers are in ***South Carolina***, Appx610-11; Appx617 n.1; Appx677; Appx837.

The district court dismissed AMR's argument that certain evidence—locally-saved Roku test logs relevant to infringement—was available only in the WDTX. Appx7-8; Appx610 (citing Appx716-19). The district court noted that Roku "contest[ed]" that the test logs were available only in Austin and that Roku had "indicate[d] that this evidence is accessible electronically." Appx8 n.1. But the district court never found

the test logs in fact were "accessible electronically." The evidence Roku cited merely asserted that "some entries which are considered essential" were sent to a "database," without showing the particular test logs at issue were accessible through that database. Appx1216 (citing Appx1299). Without discussing that, the district court held the access-to-evidence factor "weighs strongly in favor of transfer." Appx8.

**_Compulsory process to secure witness attendance._** The district court found compulsory-process concerns "weigh[] slightly in favor of transfer." Appx9. Roku, the court stated, identified "two witnesses who would be subject to compulsory process in the NCDA" but not the WDTX—apparently referring to two co-inventors of a "Shazam patent application" Roku purported to assert as prior art. Appx8-9; Appx26. Roku had not identified the Shazam application as prior art in any of its invalidity counterclaims. Appx618 (citing Appx1007-195). Nor had it explained why it would need to call inventors of prior art as trial witnesses; it had not listed any other prior-art inventors as potential witnesses. Appx618 (citing Appx823-24). The court nevertheless found it "likely that [those witnesses] will testify, as Roku seeks to invalidate the Asserted Patents in part on the basis of the prior art." Appx9.

10

The district court disregarded AMR's evidence that two likely witnesses were subject to subpoena power only in WDTX. AMR had presented evidence that former Roku employee Michael Veach had personal knowledge of Roku's work on ACR before the 2021 Nielsen acquisition, dating to 2017 (the beginning of the statutory infringement/ damages period). Appx686; Appx1241. And it presented evidence that another former Roku employee, Joel Teklu, was a leading licensing executive with knowledge relevant to AMR's damages case. Appx679-80. The district court, however, noted that Roku "disputed their relevance" and asserted that other witnesses "would have more information." Appx9.

***Local interest.*** The court found the Northern District of California had a "greater local interest in this case" because "Roku is headquartered there" and there was a putative "interest in having the allegations brought against local companies decided in that district." Appx13. The court also noted that "the technologies at issue were developed in part in the NDCA (as well as in South Korea)," Appx13, but did not address evidence that Roku's work on the infringing technology, including testing, also occurred in Austin, in the WDTX, Appx609-10 (citing Appx686). While acknowledging Roku's "presence" in Austin, the district

court emphasized AMR's lack of a "connection" to the WDTX. Appx13. Accordingly, it found the local-interest factor weighs "strongly in favor of transfer." Appx13.

***Remaining factors.*** The district court found all other factors neutral. The court noted its "particularly heavy civil case load," comprising "900 active civil cases," Appx12, but found the factor "should not be assigned any weight." Appx12-13.

In sum, the district court found that two private-interest factors (witness convenience and access to proof) strongly favored transfer; another (compulsory process) slightly favored transfer; and one public-interest factor (local interest) strongly favored transfer. Appx6-13. It found the remaining four factors neutral. Appx11-13.

## REASONS THE WRIT SHOULD ISSUE

"[M]andamus is appropriate when there is a clear abuse of discretion" in "a district court's ruling on a venue transfer motion." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) ("*Volkswagen II*").[3] A district court necessarily abuses its discretion where its decision

---

[3] Regional circuit law—here, Fifth Circuit law—governs both the standard for transfer under § 1404(a) and "mandamus review of a district court's ruling on a motion" for such a transfer. *In re Samsung Elecs. Co.*,

rests on legal or clear factual error. *See Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022); *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002). The district court decision here reflects a clear abuse of discretion.  It repeatedly disregards governing Fifth Circuit precedent—and exacerbates that departure with clear factual error.

Under governing Fifth Circuit precedent, the most critical transfer factor, witness convenience, is measured by distance of travel on a linear basis—more distance, more inconvenience. The district court diluted that rule's impact by ruling that additional travel distance can be disregarded where those "witnesses will have to travel a significant distance regardless." Appx10. But the Fifth Circuit has squarely rejected that approach. *See In re TikTok, Inc.*, 85 F.4th 352, 361-62 (5th Cir. 2023); *In re Clarke*, 94 F.4th 502, 514 (5th Cir. 2024). The Fifth Circuit has also held that, when considering the local-interest factor, courts may "not consider the parties' connections to the venue." *Clarke*, 94 F.4th at 511. But the district court did the opposite: It held that local interests "strongly" favor transfer "because Roku is headquartered [in the NDCA]."

---

2 F.4th 1371, 1375 (Fed. Cir. 2021); *see Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

Appx13.

The district court's remaining analysis reflects the sort of glaring factual error that likewise makes mandamus appropriate. The district court ruled that California is more convenient for a "higher number" of witnesses. Appx11. But the parties identified at least 20 witnesses for whom Texas is closer, and at most 13 for whom California is closer. Thirteen is not a "higher number" than 20. The district court also placed great weight on the notion that Roku's cloud servers were located in California. But Roku admitted those servers are in *South Carolina*.

Mandamus is particularly appropriate given the recurring nature of the errors. This year alone, the same district court has failed to apply governing Fifth Circuit precedent on transfer motions in *half a dozen cases*. Mandamus is warranted to correct that error and ensure consistency on an important issue of judicial administration.

## I.    The district court clearly abused its discretion by committing clear legal and factual error.

In the Fifth Circuit, transfer under §1404(a) is warranted only when the party seeking transfer "clearly demonstrate[s]" that its chosen venue is "'clearly more convenient.'" *Clarke*, 94 F.4th at 508. "It is the movant's burden—and the movant's alone—to 'adduce evidence and

14

arguments that clearly establish good cause for transfer[.]'" *Id.* The movant must show both that "the marginal gain in convenience will be *significant*," and that "its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* (emphasis in original).

That standard, the Fifth Circuit has emphasized, is demanding. The "'fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.'" *Clarke*, 94 F.4th at 508. And transfer must be ***clearly*** warranted: The standard "is not met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient'"; "a mere preponderance of the evidence is insufficient." *Id.* at 508 & n.3.

A district court deciding a § 1404(a) transfer motion must carefully consider the relevant public and private interest factors:

> (1) "relative ease of access to sources of proof"; (2) "availability of compulsory process to secure the attendance of witnesses"; (3) "cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "administrative difficulties flowing from court congestion"; (6) "local interest in having localized interests decided at home"; (7) "familiarity of the forum with the law that will govern the case"; and (8) "avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*TikTok*, 85 F.4th at 358 (quotation marks omitted). While transfer decisions are discretionary, the district court must offer a "sound basis" for its conclusions, *Samsung*, 2 F.4th at 1379, "rooted in the record evidence," *TikTok*, 85 F.4th at 360. The court may not "rely[] on 'conclusory assertions'" or "speculation." *Clarke*, 94 F.4th at 513. "'A district court by definition abuses its discretion when it makes an error of law,'" such as "applying the wrong legal standard." *Defense Distributed*, 30 F.4th at 427. Clear factual error likewise constitutes an abuse of discretion. *Tollett*, 285 F.3d at 363.

Here, the district court repeatedly departed from the Fifth Circuit's governing legal standards. And it repeatedly made factual assertions the record flatly contradicts. Shorn of legal and factual error, the relevant factors weigh decisively against transfer—and certainly do not "plainly" and "clearly" favor transfer.

## A.    The district court committed clear legal and factual error in assessing witness convenience.

### 1.    The district court departed from the 100-mile test required by governing Fifth Circuit precedent.

As the district court recognized, witness convenience—*i.e.*, the cost of attendance for willing witnesses—is generally "the most important

factor to be considered when deciding whether to transfer venue." Appx9-10; *see In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *2 (Fed. Cir. Oct. 4, 2021) ("'probably the single most important factor in transfer analysis'").

In assessing that factor, the Fifth Circuit applies a "100-mile test" that looks to linear distances. *TikTok*, 85 F.4th at 361. Where, as here, the existing venue and proposed venue are more than 100 miles apart, "'the factor of inconvenience to the witnesses increases in ***direct relationship*** to the additional distance to be traveled.'" *Id.* (emphasis added) (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*")). Thus, as the Fifth Circuit recently clarified, witness convenience must be assessed "as a function of distance": "the factor of inconvenience borne by witnesses positively and ***linearly*** scales with the additional distance they must travel." *Clarke*, 94 F.4th at 514 (emphasis added).

The district court acknowledged that AMR identified numerous "potential witnesses located in the United Kingdom, New York, and Boston," which are all much further from the Northern District of California than from the Western District of Texas. Appx10; *see* Appx611-

17

14. Under the Fifth Circuit's 100-mile test, the district court was required to consider what "additional distance" those witnesses would have to travel to reach the Northern District of California. *Clarke*, 94 F.4th at 514. Only then could the court meaningfully consider whether the "inconvenience" to those witnesses in traveling to California was clearly outweighed by the inconvenience to other witnesses in traveling to Texas. *See id.*

The district court did not do that. Instead, it dismissed the additional inconvenience that transfer would impose on the New York, Boston, and UK witnesses, reasoning that "courts should not apply the [100-mile] rule rigidly if witnesses will have to travel a significant distance regardless of the venues at stake." Appx10.

The Fifth Circuit has unequivocally rejected that approach. In *TikTok*, that court considered the denial of a motion to transfer venue from the Western District of Texas to the Northern District of California. 85 F.4th at 356. The district court had found the witness-convenience factor "neutral" because "'the key witnesses . . . are in China'" and would have to travel a significant distance to either venue. *Id.* at 361. The Fifth Circuit granted mandamus, holding that that reasoning "ignores our 100-

mile test." *Id.* The Chinese witnesses "would have to travel thousands of extra miles" to reach Texas rather than California. *Id.* at 361-62. The associated burden could not be ignored simply because the witnesses were "in China" and would need to travel a long way to either district. *Id.* Although far from China, the Fifth Circuit explained, the Northern District of California was still much closer than the Western District of Texas; it thus was "clearly more convenient" for those witnesses, and the district court "committed a clear abuse of discretion in concluding otherwise." *Id.* at 362.

The district court committed the same error here (with the direction of travel reversed). It dismissed the additional inconvenience to witnesses from New York, Boston, and the UK because they would "have to travel a significant distance regardless of the venues at stake." Appx10. Under *TikTok*, that is impermissible—the court was required to consider the "thousands of extra miles" those witnesses would have to travel to get to California instead of Texas. 85 F.4th at 361-62. The failure to do so was clear legal error and a clear abuse of discretion. *Id.* at 362.

To support its watered-down approach to the 100-mile rule, the district court cited *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020).

Appx10. That pre-*TikTok* decision suggested that "the [Fifth Circuit's] 100-mile rule 'should not be rigidly applied' where witnesses 'will be required to travel a significant distance no matter where they testify.'" *Apple*, 979 F.3d at 1342. But *Apple* predates the Fifth Circuit's more recent clarification of its 100-mile test. After *TikTok* and *Clarke*, Fifth Circuit law is now clear: Inconvenience to witnesses "positively and ***linearly*** scales with the additional distance they must travel." *Clarke*, 94 F.4th at 514 (emphasis added). Additional distance cannot be discounted simply because witnesses will travel a long way regardless— whether that distance is measured from China (as in *TikTok*) or the UK, New York, and Boston (as here).

The district court may have mistakenly believed itself bound by ***this Court's*** decision in *Apple*, ***despite*** contrary intervening Fifth Circuit precedent. But that only underscores the need for mandamus. The legal error will persist until this Court corrects it. And where regional circuit law governs, this Court applies "the current law of" the relevant circuit. *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1376 (Fed. Cir. 2006). Insofar as *Apple* reflects a different and now-outdated view of Fifth Circuit law, it must yield to that court's "[m]ore recent[]" "clarifi[cation]"

20

of its own law. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1325-26 (Fed. Cir. 2008); *see Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984) ("Where the regional circuit court has spoken on the subject, we must apply the law as stated.").

### 2.    The district court's factual analysis compounded the error.

The district court exacerbated that error with further legal error—and a plain mistake of mathematics. In analyzing witness convenience, district courts should assess "the relevance and materiality of the testimony" witnesses may provide, *Volkswagen I*, 371 F.3d at 205, with findings "rooted in record evidence," *TikTok*, 85 F.4th at 360. The district court made no such assessment. It asserted that the "higher number" of witnesses in "the NDCA and South Korea," compared to the "East Coast and Europe[]," meant that having proceedings in the NDCA would lessen the overall burden on witnesses. Appx11. Such a rote counting exercise does not come close to the record-based analysis of "relevance and materiality" that Fifth Circuit law requires.

The district court also made a math error. Roku identified at most 13 witnesses located in California or South Korea. But AMR identified *25* witnesses located in Texas, New York, Boston, and the UK for whom

21

Texas was closer:

| | Roku-identified witnesses in or closer to NDCA | AMR-identified witnesses in or closer to WDTX |
|---|---|---|
| 1 | **Virginie De Bel Air (CA)** | **Michael Veach (TX)** |
| 2 | **Shashank Merchant (CA)** | **Joel Teklu (TX)** |
| 3 | **Louqman Parampath (CA)** | **Lisa Mandrusiak (TX)** |
| 4 | **Karthik Rangappa (CA)** | **Muhammad Karrar (TX)** |
| 5 | **Charles Seo (South Korea)** | **Siva Palanivelu (TX)** |
| 6 | **Yongjoo Hong (South Korea)** | **Matthew Grover (UK)** |
| 7 | **Anvesh Junnuthula (CA)** | **Steve Cormie (UK)** |
| 8 | **Cameron Baharloo (CA)** | **Varun Himanshu (MA)** |
| 9 | **Rama Kalluri (CA)** | **Jonathan Faubert (MA)** |
| 10 | **Arno Glim (CA)** | **Sachin Doiphone (MA)** |
| 11 | **Tom Lee (CA)** | **Ziggy Zografakis (MA)** |
| 12 | **Raghavendra Sunku (CA)** | **Scott Rosenberg (NY)** |
| 13 | **David Wang (CA)** | **Tommy Burk (NY)** |
| 14 | | **Gil Fuchsberg (NY)** |
| 15 | | **Sean Donohue (NY)** |
| 16 | | **Courtney Kundtz (NY)** |
| 17 | | **Scott Lowry (NY)** |
| 18 | | **Youseff Ben Youseff (NY)** |
| 19 | | **Scott Huang (NY)** |
| 20 | | **Janani Jayes (NY)** |
| 21 | | Jonathan Steuer (NY) |
| 22 | | Mike Mauriel (NY) |
| 23 | | Mike Pears (NY) |
| 24 | | Rolfe Swinton (NY) |
| 25 | | Ozer Teitelbaum (NY) |
| **(Current and former Roku employees in bold.)** | | |

Appx20-21, Appx609-14, Appx1214-15.

Because 13 is not greater than 25 in any system of math, the district court's assertion that a "higher number of likely witnesses" were closer to the NDCA than to the WDTX cannot stand.

The little analysis the district court offered only underscores the error. AMR identified 5 witnesses located in the WDTX, consisting of 2 former and 3 current Roku employees. Appx609-10. The district court nonetheless asserted that "all of the likely witnesses are located outside of the WDTX." Appx10. The court apparently based that assertion on its earlier discussion (in connection with the compulsory-process factor) of "two former Roku employees in this district" whose relevance Roku "disputed." Appx9.[4] But that discussion explicitly did ***not*** address Roku's 3 "***current*** employees" in the WDTX. Appx9 n.2 (emphasis added).

As to those witnesses, the district court offered only an unexplained assertion that there was "no reason to think" they would "provide any relevant testimony." Appx10. But testimony from those witnesses plainly would be relevant. AMR showed that they worked on the accused ACR technology. Appx609-10; *see* Appx679-80; Appx686. One witness, Lisa

---

[4] As discussed below, the district court's discussion of those former employees was itself clearly erroneous. *See* pp. 32-33, *infra*.

Mandrusiak, was involved in pre-suit discussions between Roku and AMR, relevant to willfulness. Appx610; Appx701. Without even mentioning that evidence, the district court could not plausibly find "no reason to think" those witnesses would provide "any relevant testimony," Appx10—and certainly could not find it "plainly obvious" those witnesses would not testify, *Clarke*, 94 F.4th at 508.

Regardless, the district court gave no reason for disregarding the remaining 20 witnesses located in New York, Boston, and the UK. The court nowhere found those witnesses lacked relevant testimony or were unlikely to testify (much less that Roku had clearly demonstrated they would not testify). Those 20 witnesses *alone* outnumber the 13 witnesses Roku identified in California and South Korea. The district court's assertion that a "higher number" of witnesses were in California and South Korea than in New York, Boston, and the UK, Appx11, is thus clearly erroneous: 13 is not a "higher number" than 20. Granting transfer on that patently flawed basis was a clear abuse of discretion.[5]

---

[5] Moreover, 13 witnesses in California and Korea is a charitable count. Seven of those witnesses were identified only belatedly in Roku's *reply*. Roku's transfer motion identified only 5 witnesses in California and Korea (Debelair, Merchant, Seo, Hong, Parampath), insisting they were Roku's "most knowledgeable" employees on relevant issues. Appx20-21.

Perhaps because there is ***not*** actually a "higher number" of witnesses closer to NDCA than WDTX, the district court minted a new legal rule: It declared that "witnesses of the alleged infringer are more important than those of the party alleging infringement." Appx11. It cited no authority for that proposition. Placing a thumb on the scale in favor of ***defendants*** defies the Fifth Circuit's admonition that courts "'must also give some weight to [a] ***plaintiff['s]*** choice of forum' and his role as master of the complaint." *Clarke*, 94 F.4th at 515-16 (emphasis added). And even if a defendant's witnesses could somehow be deemed more important, the district court failed to explain, based on record evidence, why 13 witnesses closer to NDCA should outweigh 25 witnesses closer to WDTX—especially when ***20*** of the 25 witnesses closer to WDTX are ***Roku-affiliated*** witnesses. *See* Appx609-14; p. 22, *supra* (chart).

---

On reply—after AMR pointed out the many knowledgeable witnesses in Texas, the East Coast, and Europe—Roku suddenly identified 7 additional California witnesses (Junnuthula, Baharloo, Kalluri, Glim, Sunku, Lee, and Wang) it contended were "more likely to testify" than some witnesses AMR identified. Appx1214-15. Roku also filed four brand-new declarations to which AMR had no opportunity to respond. Appx1303. The district court's refusal to strike Roku's belated, sandbagging evidence, Appx4-5, *see* Appx1306-11, was itself an abuse of discretion. Regardless, the timing of Roku's disclosure belies any suggestion that ***all*** those witnesses will actually testify. And even counting those witnesses, there are still more witnesses closer to WDTX.

Under Fifth Circuit precedent, "'conclusory'" assertions and "speculation," devoid of explanation or record support, cannot support a transfer of venue. *Clarke*, 94 F.4th at 513. Especially when it comes to the concededly "'most important [transfer] factor,'" Appx11, the district court's threadbare and error-laden analysis does not come close to satisfying the obligation to grant transfer only where "'good cause'" is "clearly demonstrated" and "plainly obvious." *Clarke*, 94 F.4th at 508.[6]

### B.    The district court's analysis of the access-to-evidence factor disregarded precedent and rested on speculation and clear factual error.

To show "ease of access to sources of proof" favors transfer, the movant must make "an ***actual showing of the existence*** of relevant sources of proof" in the transferee forum, "not merely an expression that some sources ***likely*** exist in the prospective forum." *Defense Distributed*, 30 F.4th at 433-34 (emphasis added). Yet the district court granted transfer based on a mere "likelihood" that relevant documents existed in the NDCA. That reasoning was contrary to precedent—and rested on clear factual error to boot.

---

[6] At a minimum, the district court's cursory analysis is insufficient to permit review, requiring remand. *In re FedEx Corp. Servs., Inc.*, No. 2022-156, 2022 WL 10887770, at *1-2 (Fed. Cir. Oct. 19, 2022).

1.    The district court found it "likely" that "more of Roku's relevant documents will be located in the NDCA than this district." Appx7. It speculated that must be the case because "Roku is headquartered in the NDCA and the technologies at issue were mainly designed and developed in the NDCA or in South Korea." Appx7. But that is precisely the rationale *Defense Distributed* holds insufficient. The movant must show that relevant documents "***actual[ly]***" exist in the proposed forum, not just that they "***likely*** exist." 30 F.4th at 434 (emphasis added). And assertions that documents might be in California "***or in South Korea***," Appx7 (emphasis added); *see* Appx24-25, do not clearly establish that the documents actually exist ***in California***.

In an apparent effort to fill the gap, the district court emphasized that Roku's "cloud servers (where it stores its documents)" were "located in the NDCA." Appx6-7. But Roku admitted in venue discovery that the servers it uses to host source code are actually in ***South Carolina—not*** California. Appx610-11; Appx617 n.1; Appx677; Appx837. The court's finding that those servers were "located in the NDCA," Appx7—a centerpiece of its access-to-evidence analysis—is thus clearly erroneous. Relying on a clearly erroneous premise is a clear abuse of discretion.

*Tollett*, 285 F.3d at 363.

The point of cloud storage, moreover, is that access to stored material is not tied to a physical location. *See* Appx615-17. The Fifth Circuit thus has instructed that, "when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *TikTok*, 85 F.4th at 358 (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). The district court's view that the location of cloud-stored documents "weighs strongly in favor of transfer," Appx8, defies Fifth Circuit precedent yet again.

The district court objected that "the fact that most evidence is electronic does not mean that access is uniform in each district." Appx7. But if access to cloud-stored materials were somehow not uniform between two venues, the "burden" was on Roku "alone" to prove that. *Clarke*, 94 F.4th at 508. Roku offered no such proof. Roku's witnesses admitted that its source code and technical documents are equally accessible from both districts. Appx615-17 & n.1 (citing Appx633,

Appx635-37, Appx734, Appx676-77, Appx837).[7] And insofar as the district court drew an inference in Roku's favor based on a ***lack*** of evidence, it impermissibly reversed the burden of proof.

2.    The district court's treatment of Roku's widely accessible cloud-stored documents (on servers in South Carolina) stands in sharp contrast to its treatment of evidence located and available ***only*** in the WDTX. AMR showed that an Austin-based Roku employee had saved relevant test logs on his local system in the WDTX. Appx610 (citing Appx716-19). The district court disregarded that evidence because "Roku contest[ed] AMR's characterization of this piece of evidence as being only accessible in Austin . . . [and] indicate[d] that this evidence is accessible

---

[7] The district court noted that Roku's "'Trust Engineering' team (which handles source code discovery in litigation)" is in the NDCA. Appx6-7. But Roku did not contend, and the district court identified no proof, that the "Trust Engineering" team's California location precludes accessing source code elsewhere electronically. To the contrary, Roku admitted that ***any*** of its engineers can access the source code from ***anywhere***. Appx676-78; Appx740-41. This is unlike *TikTok*, where the movant proved that its source code could ***only*** be accessed by certain individuals in California (or China). 85 F.4th at 359. Nor did Roku or the district court identify any evidence that the "Trust Engineering" team's discovery efforts would be meaningfully affected by whether this case proceeds in NDCA or WDTX. Absent such proof, Roku cannot have "clearly demonstrated" a "*significant*" "gain in convenience." *Clarke*, 94 F.4th at 508 (emphasis in original).

electronically via a remotely accessible database." Appx8 n.1 (citing Appx1216). But Roku did not offer—and the district court did not identify—evidence that the relevant logs are ***in fact*** saved on a "remotely accessibly database." Roku's cited evidence asserted only that "***some*** entries which are considered essential" are sent to "the BDP, to a database," Appx1216 (citing Appx1299) (emphasis added)—without showing those entries include the logs in question. Appx1216. The "district court erred by uncritically accepting [such] conclusory assertions." *Defense Distributed*, 30 F.4th at 434; *see Clarke*, 94 F.4th at 514.

Even if the WDTX-based logs were remotely accessible, that would make them no different from the other materials on Roku's cloud servers. The district court never explained why the fact that documents are remotely accessible is more important than their actual location for documents stored in the WDTX, but not for evidence supposedly stored in the NDCA. Such illogical, contradictory treatment of similarly situated evidence was a further clear abuse of discretion.

## C. The district court's analysis of the compulsory-process factor is conclusory and unsupported.

"Section 1404(a)'s good-cause requirement prohibits a district court from relying on 'conclusory assertions,'" "speculation," or "uncritical[]

accept[ance]" of one party's position. *Clarke*, 94 F.4th at 513-14. In analyzing availability of compulsory process to secure witness attendance, however, the district court "uncritically accept[ed]" Roku's speculative assertions, while brushing off AMR's evidence without explanation. *Id.* at 514.

The district court stated that Roku identified "two witnesses who would be subject to compulsory process in the NDCA" but not the WDTX—the two co-inventors of a "Shazam patent application" purportedly asserted as prior art. Appx8-9; Appx26. The district court declared it "likely that [those witnesses] will testify, as Roku seeks to invalidate the Asserted Patents in part on the basis of the prior art." Appx9. The district court ignored that Roku ***did not identify*** the Shazam patent application as prior art in any invalidity counterclaims. Appx618 (citing Appx1007-195). Nor did Roku explain why asserting a patent application as prior art would entail calling its inventors as trial witnesses. Tellingly, Roku's disclosures did not list any ***other*** inventors of asserted prior art as potential witnesses. Appx618 (citing Appx823-24). And AMR presented evidence the Shazam inventors had no relevant substantive factual knowledge. Appx618 (citing Appx833 (¶¶ 4-5)).

Roku appears to have listed the Shazam inventors as witnesses solely to bolster its transfer motion, without any intention of actually calling them at trial. Appx618. Yet the district court did not address that—much less explain how, given that evidence, Roku had shown it "plainly obvious" that the Shazam witnesses "*actually*" would testify. *Clarke*, 94 F.4th at 508 (emphasis in original). The "district court erred by uncritically accepting" Roku's unsupported—indeed, contrived—assertions. *Id.* at 514.[8]

Conversely, AMR identified two former Roku employees subject to compulsory process only in the WDTX. Appx609-10; Appx618-19; Appx679-80; Appx685-86. One of those former employees, Michael Veach, has personal knowledge of Roku's work on ACR prior to the 2021 Nielsen acquisition, dating to 2017 (the beginning of the statutory infringe-

---

[8] Roku also asserted that the company Audible Magic possessed prior-art evidence, without identifying actual witnesses whose attendance might need to be secured by subpoena. Appx8-9. The district court does not appear to have relied on Audible, relying instead on the "two witnesses" from Shazam. Appx9. Regardless, the Audible patent Roku referenced in its transfer motion (U.S. Patent No. 8,972,481) *also* was not identified in Roku's invalidity counterclaims, *see* Appx1007-1195. And, as with the Shazam witnesses, Roku never explained why it would call an Audible witness when it identified no other prior-art inventors as potential witnesses.

ment/damages period), which is relevant to AMR's infringement case. Appx686; Appx1241. The other, Joel Teklu, was a leading licensing executive with knowledge relevant to AMR's damages case. Appx679-80.

The district court apparently concluded that those Texas-based witnesses would not testify because Roku "disputed their relevance" and asserted that other witnesses "would have more information." Appx9. But a finding that Roku "disputed" the relevance of AMR's witnesses is not a finding that Roku "clearly demonstrated" they **were in fact irrelevant**, as Fifth Circuit precedent requires. *See Clarke*, 94 F.4th at 508. And Roku's view that its preferred witnesses might have "more" information does not make other witnesses **irrelevant**. *See* Fed. R. Evid. 401. As plaintiff, AMR has the right to decide how to prove its case. And as AMR showed, Veach's pre-acquisition knowledge is likely superior to that of Roku's preferred witnesses, who joined Roku only in 2021. Appx609-10; Appx613. The district court's brush-off of AMR's evidence in favor of Roku's assertions is "speculative and ignores the plaintiff['s] role as master of the complaint." *Clarke*, 94 F.4th at 515. With two witnesses subject to compulsory process only in WDTX, and **no** such witnesses in

33

NDCA (or at most two, from Shazam and possibly Audible),[9] this factor
weighs against transfer.

### D. The district court's analysis of the local-interest factor defies precedent.

Fifth Circuit precedent is clear: The "local interest" factor "'look[s]
not to "the parties' significant connections to each forum . . . but rather
the significant connections between a particular venue and the events
that gave rise to a suit."'" *Clarke*, 94 F.4th at 511. The analysis must
"focus on the *events*—not the *parties*." *Id.* (emphasis in original).

The district court violated that directive. It found that the local-
interest factor weighs "strongly in favor of transfer" based almost entirely
on ***Roku's presence*** in the Northern District of California. It reasoned
that "the NDCA has a much greater local interest in this case ***because***
***Roku is headquartered there***." Appx13 (emphasis added). It stated
that "the NDCA has a cognizable interest in having the allegations
brought ***against local companies*** decided in that district." Appx13
(emphasis added). And it objected that AMR does not have "any
connection" to the Western District of Texas. Appx13. That was legal

---

[9] Roku made no showing that it would need to call both Shazam co-inventors.

error. The "local interest" analysis does "not consider the parties' connections to the venue." *Clarke*, 94 F.4th at 511.

The district court's passing comment that the "technologies at issue were developed in part in the NDCA (as well as in South Korea)," Appx13, cannot salvage that erroneous analysis. The court's opinion makes clear that Roku's NDCA presence was the driving force behind its conclusion that local interests "strongly" favored transfer. Nor did the court engage with record evidence about where the accused technology was "developed." The district court and Roku admitted that some—if not most—was developed "in South Korea," not California. Appx13; *see* Appx624 (citing Appx20). The district court also overlooked evidence that product development and testing occurred in Austin—in the WDTX. Appx625; *see* Appx684-86. And some accused technology (from Nielsen) was acquired in a deal based in New York. Appx624-25.

Given that, the court could not—and did not—find that Roku "clearly demonstrated" that the ""events that gave rise to [the] suit"" took place primarily in the NDCA. *Clarke*, 94 F.4th at 508, 511; *see TikTok*, 85 F.4th at 364-65 (transferee forum lacks "strong interest" in dispute where "critical conduct occurred" elsewhere, even if some "relevant

35

event," such as "implementation" of technology obtained elsewhere, occurred in transferee forum). Accordingly, the "local interest is, at most, neutral." *Clarke*, 94 F.4th at 513. In ruling it "weighs strongly in favor of transfer," Appx13, "the district court clearly abused its discretion," *Clarke*, 94 F.4th at 513.

The local-interest factor, moreover, cannot by itself support transfer. If only one factor out of eight favors transfer, a defendant cannot have "clearly" established that "the marginal gain in convenience will be *significant*" and "that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Clarke*, 94 F.4th at 508 (emphasis in original). The Fifth Circuit has "expressly held—in no uncertain terms—that 'no factor is of dispositive weight.' No *actually means* no." *Id.* at 515 (citations omitted; emphasis in original). One lone factor is insufficient.

### E.    None of the remaining factors supports transfer.

All the remaining factors are concededly neutral. Appx14. "Neutral factors cannot be weighed against the non-movant and in favor of transfer." *Clarke*, 94 F.4th at 515 n.22. Given that no factor supports transfer when properly analyzed—and the convenience-of-witnesses factor cuts

sharply against transfer—the district court clearly abused its discretion in ordering transfer. *Id.* at 516.

## II.    Mandamus is warranted.

Mandamus is appropriate when (1) the "right to issuance of the writ" is "clear and indisputable," (2) there are "no other adequate means to attain the relief . . . desire[d]," and (3) "the issuing court, in the exercise of its discretion," is "satisfied that the writ is appropriate under the circumstances." *TikTok*, 85 F.4th at 357-58 (quotation marks omitted). The district court's "'clear abuse of discretion,'" discussed above, alone establishes AMR's "clear and indisputable right to the writ." *Id.* at 358.

The remaining elements underscore the need for mandamus.  The no-adequate-remedy requirement is necessarily "'satisfied in the motion-to-transfer context.'" *TikTok*, 85 F.4th at 357-58. And "writs of mandamus . . . are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319. The Fifth Circuit has emphasized that transfer decisions are especially well-suited for mandamus relief, because "venue transfer decisions are rarely reviewed, and district courts have applied our tests with too little regard for consistency of outcomes." *Clarke*, 94 F.4th at 516.

That is especially true here. Throughout its analysis, the district court ignored the Fifth Circuit's recent decisions in *TikTok* and *Clarke*—both extensively cited in AMR's transfer opposition—in favor of outdated precedent from this Court that lacked benefit of those recent clarifications of Fifth Circuit law. *See* pp. 17-21, *supra*. Nor is the decision below an outlier. The same district court has made the same error in five other transfer orders this year alone. *See Universal Connectivity Technologies Inc. v. HP Inc.*, No. 23-cv-1177-RP, 2024 WL 3305724, at *5-6 (W.D. Tex. July 3, 2024); *iCharts LLC v. Tableau Software, LLC*, No. 23-cv-1225-DII, 2024 WL 2305214, at *11-12 (W.D. Tex. May 21, 2024); *Haptic, Inc. v. Apple, Inc.*, No. 23-cv-1351-DII, 2024 WL 2954194, at *5-6 (W.D. Tex. Apr. 15, 2024); *Umbra Technologies Ltd. v. VMware, Inc.*, No. 1:23-cv-904-DII, 2024 WL 1123592, at *4 (W.D. Tex. Mar. 13, 2024); *iQar Inc. v. Tesla, Inc.*, No. 1:23-cv-694-DII (W.D. Tex. Mar. 4, 2024) (Appx1554-63). Other district courts in the Fifth Circuit have done likewise.[10]

Those district courts may mistakenly believe themselves bound by

---

[10] *E.g.*, *Freedom Pats. LLC v. DISH Network Corp.*, No. 4:23-cv-303, 2024 WL 1147828, at *4 (E.D. Tex. Mar. 15, 2024); *Emerging Auto. LLC v. Kia Corp.*, No. 2:23-cv-434, 2024 WL 3170398, at *10 (E.D. Tex. June 25, 2024).

this Court's older decisions applying Fifth Circuit law, despite interven-

ing Fifth Circuit decisions clarifying its precedent. *See* Appx10 (citing

*Apple*, 979 F.3d at 1342); pp. 19-21, *supra*. This case presents a critical

opportunity for this Court to correct that misapprehension and align its

understanding of the Fifth Circuit's 100-mile rule with current Fifth

Circuit law. Indeed, the Fifth Circuit has expressly cited this Court's

"conflicting" application of Fifth Circuit law as reason to grant

mandamus relief itself. *TikTok*, 85 F.4th at 367. Allowing district courts

to continue following an outdated view of Fifth Circuit law would

undercut the Fifth Circuit's efforts to promote "'consistency'" in resolving

transfer motions under its law. *Id.* Mandamus thus is appropriate here

to clarify issues "important to proper judicial administration" and avoid

"widespread disparities" concerning "fundamental legal standards." *In re

Micron Tech., Inc.*, 875 F.3d 1091, 1095-96 (Fed. Cir. 2017).

The district court's numerous other errors underscore the need for

review. Its analysis of the local-interest factor again defied governing

Fifth Circuit precedent. And the many clear factual errors exacerbate

those departures from governing law. Mandamus is warranted.

## CONCLUSION

The Court should grant mandamus and reverse the district court's transfer order.

Date: July 30, 2024

Respectfully submitted,

/s/ Kelsi Stayart White
Kelsi Stayart White
   *Counsel of Record*

Jeffrey A. Lamken
Lucas M. Walker
Rayiner Hashem
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Ave., N.W.
Washington, D.C. 20037
(202) 556-2000

Jason McManis
Enes Ovcina
Weining Bai
AHMAD, ZAVITSANOS
  &MENSING PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
kwhite@azalaw.com

Elizabeth K. Clarke
MOLOLAMKEN LLP
300 N. LaSalle Street,
Suite 5350
Chicago, IL 60654
(312) 450-6700

*Attorneys for Petitioner Anonymous Media Research Holdings, LLC*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-_____

**Short Case Caption:** ___In Re Anonymous Media Research Holdings, LLC_____

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _7797_____ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _07/30/2024_____

Signature: _/s/ Kelsi Stayart White_____

Name: _Kelsi Stayart White_____

**FORM 30. Certificate of Service**

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number** _24-_

**Short Case Caption** _In Re Anonymous Media Research Holdings, LLC_

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on _07/30/2024_

by   ☐   U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
     ☑   Other: _FedEx_

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| See attached | |
| | |
| | |
| | |
| | |

☑   Additional pages attached.

Date: _07/30/2024_

Signature: _/s/ Kelsi Stayart White_

Name: _Kelsi Stayart White_

# CERTIFICATE OF SERVICE

I certify that, pursuant to Fed. R. App. P. 25(c), that on July 30, 2024, a true and correct copy of the above and foregoing document was filed electronically and provided to all counsel of record by email to the following:

Matthew C. Bernstein
Patrick J. McKeever
Ji Wang
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, CA 92130-2080
MBernstein@perkinscoie.com
PMcKeever@perkinscoie.com
JiWang@perkinscoie.com

Martin E. Gilmore
Rachel Dalafave
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, TX 78701
MGilmore@perkinscoie.com
RDalafave@perkinscoie.com

Theresa H. Nguyen
PERKINS COIE LLP
1201 Third Ave., Ste 4900
Seattle, WA 98101
RNguyen@perkinscoie.com

Maria A. Stubbings
PERKINS COIE LLP
700 13th St., NW, Suite 800
Washington, D.C. 20005
MStubbings@perkinscoie.com

In addition, two copies are being sent to the following U.S. District Judge via Federal Express:

The Honorable United States Judge Robert Pitman
United States District Court for the Western District of Texas
501 West Fifth Street, Suite 5300
Austin, Texas 78701
512-916-5896

*/s/ Kelsi Stayart White*
Kelsi Stayart White